UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION


PATRICK CHAMBERS,

   Petitioner,

v.             Case No. 8:06-cv-2013-T-17MAP

SECRETARY DEPARTMENT OF CORRECTIONS,

   Respondent.

_____/

## **ORDER**

  This cause is before the Court on Petitioner Patrick Chambers' 28 U.S.C. § 2254 petition for writ of habeas corpus.  Chambers challenges his conviction and sentence entered by the Circuit Court for the Tenth Judicial Circuit, Polk County, Florida in Case No. CF02-05125.  In that case, Chambers was charged with aggravated fleeing and eluding law enforcement in count one, and resisting or obstructing an officer without violence in count two.  He was sentenced to seven years imprisonment followed by eight years probation on count one, and to time served on count two.

  A review of the record demonstrates that, for the following reasons, Chambers' petition must be denied.

Procedural History

  Chambers was charged in case CF02-05125 with Aggravated Fleeing and Eluding A Law Enforcement Officer and Resisting or Obstructing An Officer Without Violence. The

offenses allegedly took place on August 6, 2002. (State Exhibit 02, hereinafter "S/E" followed by number of exhibit)

On January 8, 2003, Chambers, represented by Assistant Public Defender William Twyford, appeared before Circuit Judge Judith Sanders. The State was represented by Assistant State Attorney Peter Sternlight (S/E 03/Change of Plea Hearing Transcript). Defense counsel advised the court that he had reviewed the police reports and that there were allegations by one officer that Chambers was traveling at 80 to 90 miles per hour, during the chase, and, knowing that a jury had been picked but not sworn, Chambers wished to enter a plea of no contest to both charges. (S/E 03/T271[1]). The court advised Chambers that the maximum penalty for fleeing or attempting to elude at high speed was 15 years and the maximum penalty for resisting multiple officers without violence was 12 months in the county jail;  that this was not a negotiated plea but a straight-up plea to the court and that it would be up to the court to decide what the proper sentence would be up to the statutory maximum provided by law; and that no one was guaranteeing him any reduced sentence. Chambers acknowledged that he understood that to be the case. (S/E 03/T28).

The prosecutor gave the following factual basis for the plea:

> On the date alleged in the information in Polk County, Florida, the Lakeland Police Department received information the defendant was wanted for a criminal offense and that there was a warrant for his arrest. He was spotted, a high speed chase ensued, with lights and sirens, during which the defendant did run some stop signs and red lights. The vehicle stopping, the defendant fled the vehicle on foot but was caught.

(S/E 03/T31)

---

[1] Internal pagination from upper right hand corner.

Chambers entered his plea, which was accepted by the Court, and sentencing hearing took place on February 14, 2003. (see S/E 04 - Sentencing Hearing Transcript). Asked why he drove away from the police officers when he realized they were trying to pull him over, Chambers testified that he did not have a license. (S/E 04/T5) He denied being aware that there was a warrant out for his arrest at that time. (S/E 04/T5). He testified that after his car came to a stop at Maurice Towing, he thought the police and a dog were behind him so he was trying to run from the dog and he then ran into a police officer and he stopped. (S/E 04/T5). Asked if he damaged any property with his driving, Chambers testified that he thought his car slid into a junk car at the back of the building**.** He said this was the result of the gravel; that he was trying to stop and was going 15 to 20 miles an hour at that time**.** (S/E 04/T6).

The State called Officer Kermin O'Brien of the Lakeland Police Department**.**  He testified that he was the primary chase officer. He observed Chambers heading west and turning onto South Grady. The officer turned on his emergency lights and equipment to alert Chambers that he was behind him and to signal for Chambers to stop. Chambers did not stop and ran a stop sign. (S/E 04/T7). Chambers ran another stop sign causing a vehicle to veer off the roadway. Officer O'Brien was in full pursuit at this time. The chase ended at Maurice's Towing. (S/E 04/T7-8).

Officer O'Brien estimated that the chase went on for about eleven miles. He documented that Chambers ran four stop lights and about seven stop signs. There were other vehicles on the road during the chase which took place about 1:00 p.m.  He noted that the speed during the chase was between 80 and 90 miles per hour. (S/E 04/T8).

During the chase, Chambers traveled up to 50 m.p.h. on roads that had a speed limit of 25 m.p.h. and between 80 and 90 m.p.h. on roads that had speed limits at a maximum of 50 m.p.h. (S/E 04/T9).

Officer O'Brien testified that there was major construction going on along Airport Road and Drane Field with people on the street. Chambers turned left onto Drane Field. Chambers did not slow around the construction site and, in fact, Chambers sped up. There were construction workers at work during that time. (S/E 04/T9).

Chambers turned left off Drane Field into Maurice's Towing. He noticed that Chambers' car had stopped and crashed into another parked car in the parking lot.  He saw Chambers jumping over the fence to elude capture. (S/E 04/T9). Officer O'Brien gave chase on foot and Chambers was apprehended on the other side of the fence by Officer Wesley. (S/E 04/T10).

Based upon what he observed, Officer O'Brien stated that Chambers "placed a lot of people in danger, especially the officers involved as well as citizens." He acknowledged that he thought that people's property, meaning cars and anything else "out there" was placed in danger. (S/E 04/T10).

The State called Assistant Chief of Police Roger Boatner. Asked to tell the court the Police Department's concern regarding fleeing and eluding cases, he testified that the city of Lakeland and the Lakeland Police Department had grave concerns over any pursuits; that the officers were at risk in any sort of pursuit at high or low speed, but particularly high speed pursuits in congested traffic areas, and that concern for the motoring public and pedestrians in the roadway caused even greater concern. He likened cars traveling at high

speeds to "very large bullets." He pointed out that the Florida legislature has seen the need to increase punishments for such cases since 1994. He stated, "Our concern is the message be sent that fleeing to elude the police will be addressed by the court." (S/E 04/T11-12).

He testified that in the instant case there was a warrant for Chambers' arrest, and his dilemma was  whether to pursue him at high speed and place others at risk or let Chambers escape. He stated that there was also the possibility of civil liability in deciding whether to engage or not engage in the pursuit, as liability attached to the officers and the city. (S/E 04/T12-13)  On cross-examination, Assistant Chief Boatner acknowledged that he did not actively participate in the pursuit of Chambers but reviewed the reports of others officers. (S/E 04/T13-14).

The prosecutor argued that the Lakeland Police Department's concern had been expressed by the testimony of Officer O'Brien and Assistant Chief Boatner (**S/E 04/T14**) He questioned Chambers' testimony that he fled because he had no valid driver's license. The State's position was that Chambers fled because he knew there was an outstanding warrant for his arrest. (S/E 04/T14).  The prosecutor pointed out that Chambers threw a firearm out of the vehicle window during the chase, and that the State felt that possession of the firearm was the true reason why Chambers elected to flee at high speed. The prosecutor asked the court to sentence Chambers to a prison term that would send a message to Chambers and others that high speed chases would not be tolerated. (S/E 04/T15).

Defense counsel argued  that Chambers' sentencing scoresheet gave the court the discretion to sentence him to a non-state prison sentence. Counsel pointed out that Chambers has been incarcerated for seven months at the time of the sentencing hearing. (S/E 04/T16) Counsel pointed out that had a history of working and that there was nothing to prevent his working if he were released; that he was in good health; that he paid his rent and was a productive citizen except for this single episode. (S/E 04/T16).

The trial court adjudicated Chambers guilty and stated:

> And I know that you may not know, but I'm sure that Mr. Twyford knows that whenever I have defendant's [sic] tried on that offense and found guilty, that I consider that a very serious offense. The legislature clearly does and as the officer has just testified, this went on for some time at very high speeds, endangering lots of people.

> And people are frequently injured if not killed in exactly these kinds of situations. It not only endangers your life, the officer's life, but innocent people who are out there driving or walking or working on construction. And they have the right to think that when there's a stop sign there or a red light there that the other traffic is going to stop. We rely upon that in driving ourselves.

> This is a very serious offense, sir. I realize that you don't have a long criminal record, but this is an extremely serious offense. And based on your plea that leaves [the sentence] up to the discretion of the Court. The court is going to sentence you on that count to seven years Florida State Prison followed by eight years of probation. Yes, sir.

> As far as the resisting the officer without violence, I'm going to find you and adjudicate you guilty and sentence you to time served on that.

(S/E 04/T18-19)

Chambers appealed, raising the issue of whether the trial court erred in relying on impermissible factors in sentencing him,  thereby denying him due process of law. (S/E 06A & 06B - Briefs filed by Chambers and the State, respectively). The Second District Court

of Appeal per curiam affirmed Chambers' conviction and sentence. *Chambers v. State*, 2005 Fla. App. Lexis 4538. (S/E 06C).

On October 13, 2005, Chambers filed a petition for writ of habeas corpus in ( the Second District Court of Appeal alleging that his appellate counsel was ineffective in failing to file a motion to correct sentencing error(s) pursuant to Fla. R. Crim. Pro. 3.800(b) while the direct appeal was pending (in order to preserve for appellate review the use of improper argument and factors that were not part of the record and not objected to by trial counsel as reflected in the direct appeal). (S/E 07A). The appellate court denied the petition. *Chambers v. State*, 915 So.2d 1203 (Fla. 2d DCA 2005). (S/E 07B).

On March 15, 2006, Chambers filed a pro se 3.850 motion for post conviction relief. (S/E 08A). On April 20, 2006, the state trial court denied the rule 3.850 motion for post-conviction relief.  After Chambers' motion for rehearing was granted, the state trial court rescinded its first order denying post-conviction relief and entered a second order denying all post-conviction relief. (S/E 08G/1-03)

Chambers appealed the trial court's denial of his 3.850 motion. No briefs were filed on appeal. The Second District Court of Appeal per curiam affirmed the denial of relief. *Chambers v. State*, 937 So.2d 129 (Fla. 2d DCA 2006) (S/E 08H). A mandate issued September 13, 2006 (S/E 08I)

Chambers present federal petition is timely filed.

## STANDARDS OF REVIEW

Under 28 U.S.C. § 2254(d) and (e) as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), this court's review of the state court's factual findings

must be highly deferential. Such findings are presumed to be correct unless rebutted by clear and convincing evidence. Similarly, the state courts' resolutions of issues of law-including constitutional issues-must be accepted unless they are found to be "contrary to" clearly established precedent of the Supreme Court of the United States or involved an "unreasonable application" of such precedent. *Williams v. Taylor*, 529 U.S. 362 (2000). Indeed, it is not enough that the federal courts believe that the state court was wrong; it must be demonstrated that the state court decision was "objectively unreasonable." Id. *Breedlove v. Moore*, 279 F.3d 952 (11th Cir. 2002).

### Ineffective Assistance of Counsel Standard

To prevail on a claim of ineffective assistance of trial or appellate counsel, a Petitioner must meet the two-part test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984).  *Strickland*'s two-part test requires a Petitioner to demonstrate that counsel's performance was deficient and "there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* However, if a claim fails to satisfy the prejudice component, the court need not make a ruling on the performance component.

### Discussion

### Ground One

Chambers contends that the trial court erred in relying on impermissible factors in sentencing him. This claim is a state law sentencing issue which provides no basis for federal, constitutional habeas corpus relief. *See Brannon v. Booth*, 861 F.2d 1507 (11th Cir 1988) (per curiam); *McCullough v. Singletary*, 967 F.2d 530, 535-36 (11th Cir. 1992):

A federal habeas petition may be entertained only on the ground that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. 2254(a). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question a constitutional nature is involved. *Bronstein v. Wainwright*, 646 F.2d 1050 (5th Cir. Unit B June 1981). State courts are the ultimate expositors of their own state laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statute's by the courts of the state except in extreme cases. *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. Unit A 1981).

Federal courts cannot review a state's failure to adhere to its own sentencing procedures, even if Chambers sets out his claims as ones of equal protection or due process. *Brannon v. Booth*, 861 F.2d at 1508.

Ground one does not warrant habeas relief.

Ground Two

Chambers contends that appellate counsel was ineffective by failing to file a rule 3.800(b) motion to preserve sentencing error for review by the appellate court while the direct appeal was pending. Chambers claims that appellate counsel failed to preserve certain sentencing errors that were not objected to by trial counsel by raising them in a rule 3.800(b) motion while the direct appeal was pending. This claim has no merit.

These matters were addressed on the merits by appellate counsel in her brief on direct appeal (see S/E 06A). The State, in its answer brief (see S/E 06B) argued that the sentencing errors were procedurally barred because they were not preserved by trial counsel by objection at the sentencing hearing, or raised [by trail counsel or appellate counsel] in a rule 3.800(a) motion while the case was pending on appeal. The State also argued that, on the merits, Chambers was not entitled to relief because the evidence presented by the prosecutor, and the comments made by the prosecutor to the sentencing

judge were either legally admissible under state law, or if not admissible, constituted harmless error. The Second District Court of Appeal per curiam affirmed. *Chambers v. State*, 2005 Fla. App. Lexis 4558 (Fla. 2d DCA April 1, 2005) (see S/E 06C).

More importantly, the sentencing issues in question were matter of state law (see Ground One above). A federal court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment. *See Eagle v. Linahan*, 279 F.3d 926, 936 (11th Cir. 2001). This rule applies whether the state law ground is substantive or procedural. *Id.* The Second District Court of Appeal's denial of Chambers' state habeas corpus petition that was treated as a petition alleging ineffective assistance of appellate counsel in *Chambers v. State*, 915 So. 2d 1203 (Fla. 2d DCA 2005) (S/E 07B) was proper.

Ground two does not warrant habeas relief.

Ground Three

Chambers claims that trial counsel was in effective by failing to move to disqualify the biased trial judge from Chambers' case. Chambers argues trial counsel rendered ineffective assistance when he failed to move to disqualify the sentencing judge when the judge, after hearing testimony and argument regarding an appropriate sentence, stated "...you may not know, but I'm sure that Mr. Twyford knows that whenever I have defendant's [sic] tried on that offense and found guilty, that I consider that a very serious offense." (see Sentencing Hearing Transcript, S/E 04/T18).

Chambers quotes the judge out of context. The judge explained why she felt this was a very serious offense:

> And I know that you may not know, but I'm sure that Mr. Twyford knows that whenever I have defendant's [sic] tried on that offense and found guilty, that I consider that a very serious offense. The legislature clearly does and as the officer has just testified, this went on for some time at very high speeds, endangering lots of people. And people are frequently injured if not killed in exactly these kinds of situations. It not only endangers your life, the officer's life, but innocent people who are out there driving or walking or working on construction. And they have the right to think that when there's a stop sign there or a red light there that the other traffic is going to stop. We rely upon that in driving ourselves. This is a very serious offense, sir. I realize that you don't have a long criminal record, but this is an extremely serious offense.

(S/E 04/T18-19)

Chambers claims that these comments indicated a bias on the part of the sentencing judge and denied him a fair an impartial trial judge. The post conviction court in summarily denying this denying this claim of ineffective assistance of counsel stated:

> ....There is simply nothing in the comment proffered by Defendant or in the record that supports a conclusion that the sentencing court was prejudiced or biased against Defendant in any legally-recognized way. Accordingly, counsel cannot be ineffective for failing to raise a meritless objection or argument.

 (S/E 08B/2)

In *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) the Court held that a habeas court's standard for evaluating a state-court ruling is highly deferential, which demands that state-court decisions be given the benefit of the doubt). Pursuant to AEDPA, the state court's denial of Chambers' motion is entitled to a presumption of correctness in this Court. 2254(d).

"[A] state court's decision is not 'contrary to. . . clearly established Federal law' simply because the court did not cite [Supreme Court] opinions. . . . [A] state court need not even be aware of [Supreme Court] precedents, 'so long as neither the reasoning nor the result of the state-court decision contradicts them.'" *Id.* at 16 (quoting *Early v. Packer*, 537 U.S. 3, 7-8 (2002)). "[W]hether a state court's decision was unreasonable must be assessed in light of the record the court had before it." *Holland v. Jackson*, 542 U.S. 649, 652 (2004) (citation omitted). A state court's factual finding is presumed to be correct. Chambers must rebut the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e); *Henderson v. Campbell*, 353 F.3d 880, 890-91 (11th Cir. 2003). He has not done so.

In the instant case, the post conviction court's finding that nothing in the sentencing judge's comment reflected either prejudice or bias is rational, reasonable and logical. The court's finding that counsel did not render ineffective assistance for failing to raise a meritless objection or argument is a finding that trial counsel's performance was not deficient and that Chambers failed to satisfy the first prong of *Strickland*, *supra. See U.S. v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) (lawyer's failure to preserve a meritless issue cannot prejudice a client.)

Ground three does not warrant habeas relief.

## Ground Four

Chambers contends that trial counsel was ineffective for failing to file a Rule 3.800(b) motion to preserve sentencing errors for appellate review. Chambers makes the same argument with reference to trial counsel that he made with reference to appellate counsel

(see Ground II above).  For the same reasons that grounds one and two do not warrant habeas relief, ground four does not warrant habeas corpus relief.

Ground Five

Chambers contends that  "The trial court found that Petitioner stated three facially sufficient grounds that cannot be conclusively refuted by the records and asked the state to show cause why Petitioner should not be given an evidentiary hearing.  The trial court relied on arguments by the state to summarily deny Petitioner's post conviction relief motion in all three parts without an evidentiary hearing."

Chambers is referring to claims of ineffective assistance of counsel for failing to object to certain alleged sentencing errors. (See grounds II and IV).  A state court's failure to hold an evidentiary hearing on a collateral claim does not state a federal constitutional violation and is therefore not a basis for federal habeas corpus relief. *See Spradley v. Dugger*, 825 F.2d 1566, 1568 (11th Cir. 1987) (where a claim goes to issues unrelated to the cause of a petitioner's detention, the claim does not state a basis for habeas relief.)

Ground five does not warrant habeas corpus relief.

Ground Six

Chambers contends that the trial court denied Chambers' trial court error claim where the court used elements of Chambers' crimes to aggravate his sentence. Chambers' argument, as presented in his 3.850 motion, was that the sentencing court violated the Florida sentencing guidelines when it "aggravated" his sentence [departed from the guidelines recommended sentence] based upon factors inherent in the elements of aggravated fleeing and eluding (S/E 08A/21-23); that the post conviction court never

- 13 -

reached the merits of the claim, finding that it was an alleged error that should have been raised on direct appeal.  (S/E 08B/2).

Chambers acknowledges that the claim was not preserved for review on direct appeal because it was not objected to at the trial level and argues that the post conviction court's denial of the claim without reviewing its merits is a "violation" (see present petition at p. 11C).

When a state court has applied a state procedural bar to a claim, that claim is likewise bared from federal habeas corpus review. *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). In the instant case there was a clear and unambiguous application of a bar by the state court, followed by a per curiam affirmance on appeal (S/E 08H).  *See Harmon v. Brown*, 894 F.2d 1268 (11th Cir. 1990)  Additionally, as with ground one, this claim is an issue of state sentencing law which provides no basis for federal, constitutional habeas corpus relief. *See Brannon v. Booth*, *supra*; *McCullough v. Singletary, supra*.

Federal courts cannot review a state's failure to adhere to its own sentencing procedures, even if Chambers sets out his claims as ones of equal protection or due process. *Brannon v. Booth,* 861 F.2d at 1508. On its merits, under state law, Chambers would not be entitled to relief. Chambers relies upon case law interpreting Florida's sentencing guidelines for the legal proposition that a trial court cannot depart upward from the guidelines sentence based upon factors relating to the elements of the offense itself because such factors are already taken into consideration in determining the guideline sentence. However, Chambers was not sentenced under the Florida guidelines; he was being sentenced under the Criminal Punishment Code because the offense took place after

October 1, 1998. The Criminal Punishment Code applies to all felonies except capital crimes committed on or after October 1, 1998. Under the Criminal Punishment Code, the trial court has the discretion to impose a sentence up to the statutory maximum for any offense.[2] *Daniels v. State*, 870 So.2d 250, 253 n.2 (Fla 2d DCA 2004)("The Criminal punishment code...does not recognize the idea of an 'upward departure sentence'. Rather, the statutory maximum for the given offense limits the length of the prison sentence for that offense"); *Willingham v. State*, 781 So. 2d 512, 513 (Fla. 5th DCA 2001) ("For crimes committed after October 1998, there apparently is no longer an upward departure limitation or requirement of written reasons or right to appeal same, so long as the sentence is within the statutory maximum."); *Hall v. State*, 823 So. 2d 757, 762 (Fla. 2002)("...[t]he Code did away with upward departure sentences short of the statutory maximum..."). Under the Criminal Punishment Code, no reasons to depart are required in order to sentence anywhere from the "lowest permissible prison term" up to the statutory maximum for the offense. *Willingham*, *supra.*

Ground Six does not warrant habeas corpus relief.

### Ground Seven

Chambers claims that the trial court denied his trial court error claim when the court gave undue weight to aggravating circumstances but did not give weight to mitigating circumstances.  This claim was raised in Chambers' post conviction motion (S/E 08A/24-25). The post conviction court never reached the merits of the claim, finding that the claim should have been raised on direct appeal. (S/E 08B/2). Chambers acknowledges that the

---

[2] See Section 921.002(g), Florida Statutes (2002).

claim was not preserved for review on direct appeal because it was not objected to at the trial level and argues that the post conviction court's denial of the claim without reviewing its merits is a "violation" (see present petition at p. 11E).

When a state court has applied a state procedural bar to a claim, that claim is likewise bared from federal habeas corpus review. *Ylst v. Nunnemaker*, *supra*. In the instant case there was an unambiguous application of the bar by the state court, followed by a per curiam affirmance on appeal (S/E 08H). *Ylst v. Nunnemaker*, *id.*; *Harmon v. Brown*, *supra.* Additionally, this claim is grounded on a state law sentencing issue which provides no basis for federal, constitutional habeas corpus relief. *See Brannon v. Booth*, *supra* ; *McCullough v. Singletary*, *supra.* Federal courts cannot review a state's failure to adhere to its own sentencing procedures, even if Chambers sets out his claims as ones of equal protection or due process. *Brannon v. Booth*, 861 F.2d at 1508.

Had the post conviction court reached the merits, Chambers would not be entitled to relief. The trial court did consider his lack of any significant criminal history but found the circumstances of the offense of greater significance:

> And I know that you may not know, but I'm sure that Mr. Twyford knows that whenever I have defendant's tried on that offense and found guilty, that I consider that a very serious offense. The legislature clearly does and as the officer has just testified, this went on for some time at very high speeds, endangering lots of people.

> And people are frequently injured if not killed in exactly these kinds of situations. It not only endangers your life, the officer's life, but innocent people who are out there driving or walking or working on construction. Any they have the right to think that when there's a stop sign there or a red light  there that the other traffic is going to stop. We rely upon that in driving ourselves.

> This is a very serious offense, sir. I realize that you don't have a long criminal record, but this is an extremely serious offense. And based on your

plea that leaves us to the discretion of the Court. The court is going to sentence you on that count to seven years Florida State Prison followed by eight years of probation. Yes, sir.

As far as the resisting the officer without violence, I'm going to find you and adjudicate you guilty and sentence you to time served on that.

(S/E 04/T18-19)

Under Florida law, a specific definition of what constitutes abuse of discretion was supplied by the Florida Supreme Court in *Canakaris v. Canakaris*, 382 So.2d 1197, 1202 (Fla. 1980):

Discretion, in this sense, is abused when the judicial action taken is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable men would differ as to the propriety of the action taken by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the court abused its discretion.

It cannot be said that the sentencing court abused its discretion in sentencing Chambers.

Ground seven does not warrant habeas corpus relief.

**Accordingly, the Court orders:**

That Chambers' petition is denied.  The Clerk is directed to enter judgment against Chambers and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL IN FORMA PAUPERIS DENIED

IT IS FURTHER ORDERED that petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). *Id.* "A [COA] may issue ⋯ only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at §

2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,' " *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal in forma pauperis.

ORDERED at Tampa, Florida, on July 10, 2008.

ELIZABETH A. KOVACHEVICH
UNITED STATES DISTRICT JUDGE

Counsel of Record
Patrick A. Chambers